MANSKE, Appellant, v. MANSKE, Respondent.

*February 6—March 3, 1959.*

606

For the appellant there were briefs by *Horwitz & Regner* of Oshkosh, attorneys, and *Immell, Herro, Buehner & DeWitt* of Madison of counsel, and oral argument by *Jack R. DeWitt*.

For the respondent there was a brief and oral argument by *Charles K. Wildermuth* of Berlin.

FAIRCHILD, J. Dorothy Manske claims that the trial court abused its discretion in awarding her only $600 as a full and final division of the property and requiring her to pay her own counsel fees and costs.

The applicable statute is, of course, sec. 247.26. The question of property division of an estate in a divorce judgment is one as to which there can be few definitive rules. "As has often been said, the division of property in divorce cases is a matter peculiarly within the discretion of the trial court and depends upon the circumstances of the particular case." *Mentzel v. Mentzel* (1958), 4 Wis. (2d) 584, 590, 91 N. W. (2d) 101. "The general level to start from is one third. Since the early suggestive guide in respect to the matter, it has been pretty well established that a clear third of the whole is a liberal allowance to the wife, subject to be increased or decreased according to special circumstances." *Gauger v. Gauger* (1914), 157 Wis. 630, 633, 147 N. W. 1075. Other decisions in this field principally point out the different types of facts which can be properly taken into consideration by trial courts in making a division. With respect to misconduct it has been said in approving a particular division, "It was within the trial court's discretion to so limit her recovery because of her misbehavior. She should not, however, be pilloried." *Barrock v. Barrock* (1950), 257 Wis. 565, 570,

44 N. W. (2d) 527. One of the elements to be considered in ordering a division is whether the property possessed by the parties is the result of their joint efforts. *Pfingsten v. Pfingsten* (1916), 164 Wis. 308, 315, 159 N. W. 921; *Bruhn v. Bruhn* (1928), 197 Wis. 358, 362, 222 N. W. 242. In the case now before us the two matters of greatest importance are the question of the wife's contribution to the property of the parties, and the effect of her misconduct. It appears that both parties are in good health and employed and that their only child is self-supporting.

With respect to the misconduct it appears that Mr. Lundwitz was a married man who had a farm about 12 miles from the Manskes. Herman hired Lundwitz to do the plowing, planting, and harvesting on a custom basis. There was ample testimony by Herman, their daughter, and Dorothy's father and half brother to support the finding that Dorothy openly and notoriously associated with Lundwitz although Dorothy claimed that there was no impropriety in the relationship. They had spent a great deal of time in each other's company, both on and off the farm, and there was testimony concerning two occasions on which they had been seen kissing or embracing. The Manskes' daughter had suffered embarrassment by teasing from her schoolmates about Lundwitz's calls on her mother.

According to Herman, he had heard rumors about the association some two years before Dorothy left their home. Herman had talked to Dorothy about it and had told Lundwitz to get out. Dorothy convinced Herman that the talk was untrue and persuaded him to apologize to Lundwitz. In July, 1955, Herman objected to her going to Milwaukee with Lundwitz in his truck, but she insisted on going. Later Mrs. Lundwitz came to the Manske home and accused Dorothy of having relations with Mr. Lundwitz. Dorothy denied the accusation and became angry with Herman because he failed to take her part in the argument. Dorothy left the home in

November, 1955, and started this action several weeks later. Herman testified that he made several attempts at reconciliation both before and after Dorothy left home, but these attempts were unsuccessful. Evidently the trial court was convinced that Dorothy's testimony was not honest nor frank in a number of respects and the record indicates a basis for this conclusion.

With respect to the extent of the property, it appeared that the Manske farm consisted of 200 acres. They had bought it at a tax sale in 1940 for $1,200. They borrowed $250 for the down payment and paid off the balance in later instalments. They built a barn and machine shed. When Dorothy left, there was a mortgage of $2,000. Herman later sold the livestock and, by using the proceeds, reduced the mortgage to $500. Dorothy testified that they had talked of selling the farm if they could get $15,000. Herman's answer alleged that it was worth about $10,000, but at the trial he testified that it was worth about $8,000. The court orally found that it was worth $8,000 and subject to a mortgage of $500.

The farm machinery was valued at $500. Herman owned a 1954 Hudson at the time of trial. He had bought it after Dorothy had left at a total price of $1,395 ($1,125, plus the 1948 Hudson he had owned). At the time of trial the mortgage on the car was approximately $550 and the court orally found that the existence of any equity in the car would be speculative. The court also found that Herman had a $1,000 life insurance policy carried for eight to ten years with some cash surrender value, "but not a material amount." There was no evidence as to the amount of the cash value.

Dorothy testified that when she left there was about $600 in a joint savings account. Herman testified that the parties had had a joint checking account and that he had about $150 at the time of trial. After Dorothy left, he had purchased a TV set for $325. The court made no finding as to the value of the household furniture.

At the time of trial Dorothy was earning between $40 and $50 every two weeks and Herman was earning about $135 every two weeks.

While the parties lived on the farm Herman had worked at a factory as he still does. He testified that he had done chores before leaving for work and that Dorothy did the evening milking and helped him with the morning milking. She testified that she had been employed off the farm during three or four summers and that she had raised some garden produce for sale, using the money for her own clothing and some of the furniture. Herman testified that his earnings were always deposited in the joint account; that he did not restrict her from writing checks against the account and that she did write them for clothes and groceries and similar things.

The trial court did not state the reason for granting $600 to Dorothy except to say: "This court has concluded that under the circumstances of this case that the ordinary rules applied in divorce actions do not apply; . . ."

Upon our review of the record we have come to the conclusion that, notwithstanding the misconduct disclosed, the trial court abused its discretion in awarding as little as $600 to Dorothy. The parties evidently had little or no funds in 1940 when they purchased the farm and the assets which they had when Dorothy left fifteen years later were entirely acquired while they lived on the farm. While it may be true that the greatest contribution was made by Herman as a result of his work on the farm and in the factory, nevertheless, we think it must be assumed, in the absence of proof to the contrary, that Dorothy's efforts as a farm wife made a substantial contribution even though she was evidently preoccupied for some period with Mr. Lundwitz. It also appears that the trial court has very conservatively valued the farm of the parties, accepting as true Herman's testimony at

the trial that it was worth $2,000 less than the amount alleged in his answer, and the court has not determined any value for the automobile, the life insurance policy, and the household furniture.

We have come to the conclusion that a fair division of property will be the payment by Herman to Dorothy of the total sum of $2,000, the $1,400 in addition to the $600 allowed by the trial court being paid in instalments of $50 per month.

With respect to the matter of attorneys' fees, we make no change in the judgment appealed from. This matter is also · discretionary with the trial court. *Julien v. Julien* (1953), 265 Wis. 85, 90, 60 N. W. (2d) 753. We assume that the trial court felt that Dorothy was not entitled to have her husband pay the attorneys' fees which she incurred in large part by commencing the action which the court deemed without merit and by interposing a defense which the court also deemed without merit. As the party prevailing upon appeal, she will be entitled to tax costs in this court.

*By the Court.*—Judgment modified by adding a provision requiring that the defendant shall pay to the plaintiff, through the clerk, the sum of $1,400 in addition to the $600 previously awarded; that the said amount of $1,400 shall be a lien on the real estate owned by the parties on January 30, 1958; that it shall be paid in instalments of $50 per month commencing within ten days after remittitur; and that it shall be without interest, except that past-due instalments shall bear interest at five per cent per annum. As so modified, the judgment is affirmed.