AUSMAN, Respondent, v. AUSMAN, Appellant.

*April 14—May 10, 1966.*

For the appellant there was a brief by *Betz & LeBarron* and *Frank E. Betz,* all of Eau Claire, and oral argument by *Frank E. Betz.*

For the respondent there was a brief by *Schmitt, Wurster, Tinglum & Nolan* and *J. Michael Nolan,* all of Merrill, and oral argument by *J. Michael Nolan.*

FAIRCHILD, J. 1. *Division of property.* The family assets and liabilities are as follows:

*Assets:*

| | |
|---|---:|
| Equity in home ($11,500 value less $6,206.72 mortgage debt) | $5,293.28 |
| Furniture | 2,500.00 |
| Truck | 800.00 |
| Balance receivable on Reedy note (from sale of jewelry store) | 7,548.50 |
| Escrow fund (from sale of jewelry store) | 5,036.75 |
| Light Guard business | 600.00 |
| Accounts receivable—Light Guard business | 200.00 |
| Insurance—cash value ($150 each) | 300.00 |
| Mr. Ausman's bank account | 202.00 |
| Chevrolet (encumbered to its full value) | —— |
| Total assets | $22,480.53 |

*Liabilities (other than mortgage on home and Chevrolet):*

| | |
|---|---:|
| Owed to Mr. Ausman's mother | $3,500.00 |
| Drug store | 50.00 |
| Owed to Judy Ausman, one of the self-supporting children | 100.00 |
| Miscellaneous | 2,450.00 |
| Total liabilities | $6,100.00 |

| | |
|---|---:|
| Total assets | $22,480.53 |
| Total liabilities | 6,100.00 |
| Net worth | $16,380.53 |

The estate was divided as follows:

| | | *Wife's share* | *Husband's share* |
|---|---:|---:|---:|
| Equity in home, one half to each | | $2,646.64 | $2,646.64 |
| Furniture | | 2,500.00 | |
| Truck | | 800.00 | |
| Reedy note (to be applied to home mortgage and tax payments thereon) | | 3,774.25 | 3,774.25 |
| Sum in escrow | $5,036.75) | | |
| Husband required to use escrow fund to pay debts | $6,100.00) | | (1,063.25) |
| Light Guard business | | | 600.00 |
| Accounts receivable, Light Guard business | | | 200.00 |
| Insurance, cash value | | 150.00 | 150.00 |
| Mr. Ausman's bank account | | | 202.00 |
| Chevrolet, to Mr. Ausman | | | —— |
| | | $9,870.89 | $6,509.64 |

The court found that in 1961 and 1962 Mrs. Ausman had inherited $4,456.93 and had used it as follows: $2,500 to pay the parties' note at a bank, $600 to pay the parties' obligation on a car; $130 for a clothes dryer, unspecified amounts for furniture and improvements in the home, and several items of clothing for herself, and any re-

maining balance was left in the parties' joint checking account.

Overall, the present net estate was divided 60 percent to the wife and 40 percent to the husband. If Mrs. Ausman's entire inheritance be first deducted and considered as returned to her, the division of the balance was 45 percent to her and 55 percent to Mr. Ausman.

The parties had formerly operated a jewelry store, sold several years ago to the Reedys, and the Reedy note and escrow fund listed among the assets remain from that sale. There was testimony that Mrs. Ausman had worked in the store, although the parties did not agree on the amount of assistance she provided.

The court's finding of cruel and inhuman treatment was based upon evidence of Mr. Ausman's misconduct.

"While the division of estate in a divorce action is peculiarly within the discretion of the trial court, this court has repeatedly laid down the guideline that in general a third of the estate is a liberal allowance to the wife subject to be increased or decreased according to special circumstances. In *Kronforst v. Kronforst* [(1963), 21 Wis. (2d) 54, 61, 123 N. W. (2d) 528] we set forth four factors which would warrant granting an award of more than one third to the wife. These are a long period of marriage, complete lack of any separate estate in the wife coupled with her inability to support herself, low award of permanent alimony, and breakup of marriage due to husband's wrongful conduct." [1]

Where the wife has made contributions from her separate estate in order to make possible the acquisition of the property to be divided or in order to pay expenses which were the obligation of the husband, these circumstances merit consideration and in computing an ap-

[1] *Radandt v. Radandt* (1966), 30 Wis. (2d) 108, 113, 140 N. W. (2d) 293. See also *Gauger v. Gauger* (1914), 157 Wis. 630, 632, 147 N. W. 1075, and *Wagner v. Wagner* (1961), 14 Wis. (2d) 23, 27, 109 N. W. (2d) 507.

propriate division it may be proper in a particular case to provide, in effect, for a return of her contributions before dividing the balance.[2] A kindred element to be considered in ordering a division is whether the property is the result of the joint efforts of the parties.[3]

It should also be noted that part of the $6,100 indebtedness was in dispute, and may turn out to be less.

Viewing the property division in this case, standing alone, we could not say it was an abuse of discretion.

2. *Alimony and support money.* Although the court considered that the home should be sold and the proceeds equally divided, the use of the home seemed the most feasible way of providing shelter for Mrs. Ausman and the children. Accordingly the judgment provided that:

". . . until the further order of the court the plaintiff is entitled to the right to live in the home of the parties . . . until the youngest child of the parties reaches eighteen (18) years of age at which time the home shall be sold. . . ."

The proceeds of the Reedy note were also divided equally, in effect, since they must be devoted to payment of the mortgage balance, and real-estate taxes. The county court will make a further order regarding the taxes when these proceeds have been used up, and each party is to pay half the insurance premiums on the home.

Although Mr. Ausman views this arrangement as an additional burden imposed upon him by way of property division, we think that the delay in sale of the home so that Mrs. Ausman and the children may live in it should be viewed as provision for their support. It may be that changing circumstances in the future will require or justify a different arrangement. As noted, the judgment

---

[2] See *Wagner v. Wagner, supra,* page 29, footnote 1.

[3] *Manske v. Manske* (1959), 6 Wis. (2d) 605, 608, 95 N. W. (2d) 401.

See also *Pfingsten v. Pfingsten* (1916), 164 Wis. 308, 315, 159 N. W. 921; *Bruhn v. Bruhn* (1928), 197 Wis. 358, 362, 222 N. W. 242.

provides: "until the further order of the court." We interpret this phrase as applicable to the right of Mrs. Ausman to live in the home and other details incidental to that arrangement, but not to the ultimate equal division of the home and the Reedy note. The phrase is consistent with the concept that the use of the home is relevant to alimony and support rather than final division.

Obviously Mr. Ausman will be deprived of the use of his share of these assets for more than fifteen years if this part of the judgment remains unchanged. Equally obviously, this use of his assets must be taken into account as a partial fulfilment of his duty to support Mrs. Ausman and the children.

Mrs. Ausman, aged forty-three, was working at the time of the trial, and her net earnings after paying a baby-sitter were about $78 per month. The court awarded a total of $300 per month alimony and support money. She produced figures indicating need for $288 per month in cash. Counting her own earnings she would receive $90 more than the indicated needs.

The court found that Mr. Ausman, aged forty-five, was capable of earning $500 per month. At the trial, on August 25, 1965, he testified that he had been employed for two months by a hearing aid firm with a monthly income of $500, and take-home pay of approximately $450. His work required travel, but he was not reimbursed for expenses. He testified to personal living expenses, travel expense, and a $71 car payment which would total approximately $425 per month. Undoubtedly this total can be reduced, but it would appear to be impossible to squeeze out $300 per month, and the property division has not left him with ready assets upon which to draw.

The trial judge was acquainted with the parties, formerly had his office near their store, and had learned from one of his children of discussions of the family situation with one of the Ausman children. Two or

three passages in the record strongly suggest that the judge was not only aware through these channels of some of the facts, but permitted such information to affect his attitude toward Mr. Ausman during the proceedings. It will often happen that a judge, particularly where he resides in the same community with the parties, will have some awareness of the background of a dispute which comes into his court but his decision must always be based solely on the facts brought out before him during the course of the proceeding. Unless he is certain that he can put aside such information as may have come to him outside the record and such opinions as he may have formed thereon he must disqualify himself.

We conclude that there was an abuse of discretion under the circumstances of the case in requiring Mr. Ausman to pay a total of $300 per month alimony and support money.

The hearing on Mr. Ausman's motion for modification of the judgment was held November 2d. He testified that his employer no longer guaranteed him $500 per month, and his commissions on sales were less than that. He received $200 gross, $184.55 net for the second half of August, $500 gross, $444.77 net for September, $400 gross and $369.10 net for October. He testified, however, that he hopes to make more sales in the future. Since we are modifying the judgment, he will be entitled to credit for $100 per month from September 1st, and his delinquencies will be reduced or canceled as a result. We consider that under the circumstances the appeal from the order of November 2d should be treated as moot.

The record also shows that subsequent to November 2d, the court provided that Mr. Ausman's delinquencies should be made up out of certain payments on the Reedy note, and be ultimately charged against his share of the proceeds of the home. This order will necessarily be adjusted because of our modification of the judgment.

*By the Court.*—The $200-per-month figure for support money in paragraph 2 of the judgment is reduced to $160; the $100-per-month figure for alimony in paragraph 3 is reduced to $40, and, as so modified, the judgment is affirmed. The appeal from the order of November 2, 1965, is dismissed.