John R. DEWITT, Plaintiff-Appellant,

v.

Janice M. DEWITT, Defendant-Respondent.

Court of Appeals

*No. 78–925. Submitted on briefs July 11, 1979.—*
*Decided June 20, 1980.*
(Also reported in 296 N.W.2d 761.)

For the plaintiff-appellant the cause was submitted on the briefs of *Daphne Webb* and *Easton & Harms, S.C.,* of counsel, all of Madison.

For the defendant-respondent the cause was submitted on the brief of *Cheryl Rosen Weston* of Madison.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.   This case presents a question of first impression in Wisconsin; whether a professional educa-

tion, or the increased earning capacity which it confers on the spouse who holds it, may properly be considered as "asset" of a marital estate, subject to division in a divorce action, where the acquisition of the degree is in part attributable to the earnings and efforts of the other spouse.

John R. DeWitt (plaintiff) appeals from a judgment entered November 10, 1978, awarding a divorce to Janice M. DeWitt (defendant) on the grounds of cruel and inhuman treatment pursuant to former ch. 247, Stats. (1975). The plaintiff makes the following contentions on appeal:

(1) That granting the divorce to the defendant was against the great weight and clear preponderance of the evidence.

(2) That the trial court erred in considering his law degree as an asset for distribution in dividing the marital estate.

The parties were married in 1968. The couple's only child, Justin, was born in December of that year. The defendant had just completed her first year of college and the plaintiff had completed one semester of college at the time of the marriage.

The plaintiff resumed college in the fall of 1968, and continued as a fulltime student until he obtained his law degree in 1975. He joined his father's law firm until May 1978, when he entered his own practice with two other attorneys. He also taught parttime at the University of Wisconsin business school. The trial court's finding that the plaintiff's practice had no net value at the time of the trial is not challenged on appeal.

During the years of the plaintiff's schooling, the defendant worked fulltime at several jobs, predominantly as a legal secretary. She also worked parttime assisting her husband in several business ventures, including the management of two apartment buildings, providing com-

mercial janitorial services, running a restaurant, and developing a legal audio-visual recording service. She testified that she performed most of the household tasks, handled the family finances, and provided most of the care for the child during this time.

The plaintiff worked at various jobs, usually on a parttime basis, during the years he attended school. He also did extensive remodeling work on an apartment building the couple purchased in 1969, and in which they lived rent-free for more than a year. The downpayment of $1,000 was obtained from the sale of some stocks the plaintiff owned prior to the marriage. The building was sold at a profit in 1973, and a portion of the sales proceeds was used to purchase a home upon which the plaintiff also performed substantial work. The parties subsequently purchased a second home, which the defendant was in the process of remodeling at the time of trial.

After the plaintiff graduated from law school, the defendant quit her fulltime employment and returned to college on a parttime basis. She completed seven credits at the University of Wisconsin-Madison in the 1975 fall semester and then enrolled in the Madison Area Technical College, where she completed an associate degree in accounting during the following year. She testified that she intended to return to the university as a fulltime student in the fall of 1978, and that she wished to obtain her bachelor's degree there. The defendant also testified that at the time of the marriage she and the plaintiff agreed that it would be financially preferable for the plaintiff to attend school and complete his law degree first, and that she would then complete her college education. The plaintiff testified that there was no such understanding at the time of the marriage. He said that he would not have had to rely on his wife's financial

support for his education because his family would have helped him through school, had he requested.

The parties experienced marital difficulties and separated for a short time in 1976. An attempted reconciliation failed and the plaintiff commenced this action in January 1977, on grounds of cruel and inhuman treatment under former ch. 247, Stats. (1975).[1] The defendant counterclaimed for divorce on the same grounds.

The trial court found that both parties were guilty of cruel and inhuman treatment during the marriage. It awarded the divorce to the defendant under the doctrine of comparative rectitude,[2] finding that the "scope and effects of the acts of cruel and inhuman treatment perpetrated by the plaintiff are greater than those acts on the part [of the defendant] directed towards the plaintiff."

The court's findings of fact recite that it was "impossible to trace the assets and contributions of the parties within the context of the joint venture of the marriage" because of the variety of investments and reinvestments made by the parties from earnings, loans, and a personal injury settlement received by the defendant. The court found, however, that "their contributions were by

[1] Chapter 247, Stats. (1975), was repealed and recreated by ch. 105, Laws of 1977, The Divorce Reform Act, effective February 1, 1978. (Chapter 247, Stats. (1977), was subsequently renumbered to ch. 767 by sec. 50, ch. 32, Laws of 1979.) The act abolished cruel and inhuman treatment as a ground for divorce. Because this action was commenced prior to the effective date of The Divorce Reform Act, the provisions of the 1975 statutes are controlling.

[2] Former sec. 247.101, Stats. (1975), codified the common-law doctrine of comparative rectitude and provided in pertinent part:

In any action for divorce . . . where it appears from the evidence that both parties have been guilty of misconduct sufficiently grave to constitute cause for divorce . . . the court may grant a judgment of divorce . . . to the party whose equities on the whole are found to be superior.

no means equal," and that the defendant contributed a total of $21,226 more than the plaintiff to the support of the family during 1968 through 1975. Since the trial court's computations are not of record, it is not possible for this court to determine which exhibits or testimony the trial court relied on in arriving at this figure.[3] It is also unclear why the trial court considered the comparative contributions of the parties only during the years the plaintiff attended school, and not their contributions during the following year when the defendant was in school and the plaintiff's income was substantially higher than in prior years.[4]

The trial court found that the parties owned assets of $80,047[5] and owed debts totaling $55,245, for a net

---

[3] According to one of the defendant's exhibits, which was based upon the parties' joint tax returns, the defendant earned $50,390, or 67% of the total joint earnings, and the plaintiff earned $24,813 from 1968 through 1975, for a difference of $25,577. These figures were disputed by the plaintiff as deflating his income and inflating the defendant's. The figures do not include the proceeds of a $5,000 school loan incurred by the plaintiff for which the trial court credited the plaintiff in arriving at its figure, the $1,000 stock which the plaintiff owned prior to the marriage, or the proceeds of a personal injury settlement of $4,650 received by the defendant during this period. We are unable to determine whether the trial court's figure included the stock or the settlement.

[4] According to the defendant's exhibit, the plaintiff earned $14,042 and the defendant earned $1,768 in 1976. Considering the total joint income as reported for tax purposes during the entire marriage prior to the commencement of the action would reduce the defendant's excess contribution in earned income to $13,552. This figure excludes the parties' other financial contributions mentioned in n. 3, *supra*.

[5] This figure is the total of the figures set forth by the trial court at paragraphs 9 and 10 of its conclusions of law. The total of the individually valued items of property set forth in paragraphs 12 through 22 of the findings of fact is either $79,047 or $81,047, depending on whether home improvement materials for the house awarded to the plaintiff, which were valued at $2,000,

marital estate of $25,802. It found that the plaintiff had an earning capacity of $20,000 per year, that the defendant's earning capacity was $9,000 per year, and that neither party was entitled to alimony.[6]

The court awarded the defendant the homestead subject to an outstanding mortgage of $18,021, together with personal effects and cash resulting in a gross award to her of $45,172 and a net award of $37,151. The plaintiff was awarded the other home and personal property totaling $34,875.[7] He was ordered to assume the land contract on that home and to pay all the remaining debts of the parties in the total amount of $37,224. This resulted in a negative net award to the plaintiff of $3,349.

The trial court further found that the defendant temporarily gave up her own education in order to care for the parties' child and to support the family while her husband obtained his law degree. It found that while the law degree had no "market value," it had "the intrinsic potential for deriving future and substantial income so as to be considered an asset in the distribution of proper-

were included or excluded from the total valuation of the marital estate. The plaintiff claims these materials were erroneously included because they had been considered by the appraiser in arriving at the total value of the home. Because of the apparent mathematical error in the court's computations, we are unable to determine whether the plaintiff's claim is correct.

[6] Former sec. 247.26, Stats. (1975), provided that "no alimony shall be granted to a party guilty of adultery not condoned." The defendant took the fifth amendment when asked whether she had had sexual intercourse with a man other than her husband prior to the commencement of the divorce. The trial court made no finding concerning the defendant's alleged adultery, but found that this was "not a proper case for the award of alimony, whether or not adultery is at issue, given the short time of the marriage, the health of the parties and the property division to be ordered by the court."

[7] The correct total of the value of these assets, as found by the trial court, is either $33,875 or $35,875 for the reasons specified in n. 5, *supra.*

ty in the present case." It made the following conclusions of law, which present the core of the controversy on appeal:[8]

13. The Court concludes that under the terms of this property division, if the property is to be divided on a 50–50 basis the defendant would owe plaintiff the sum of $15,660. The Court subtracts from this sum the support arrearages of the plaintiff in the amount of $1,344 giving a difference of $14,316.
14. In considering and valuing the worth of said law degree as an asset of the parties, the Court is in agreement with the opinion of the Supreme Court of Iowa in the case entitled, "In re the Marriage of . . . Horstmann," [263 N.W.2d 885 (1978)].
15. The Court further concludes that the value of the plaintiff's law degree is not less than $14,316 and, therefore, requires no cash contribution from the defendant to the plaintiff.

### Grounds for Divorce

The plaintiff concedes on appeal that the question of which party takes a divorce against the other is of "very little significance" except to the extent that the property division may favor one party on the basis of a finding that the other party was guilty of more egregious conduct during the marriage. Under former ch. 247, Stats. (1975), which is applicable to this action, fault was a proper consideration in dividing marital estates,[9] although it could not be used to punish a guilty spouse.[10]

---

[8] The contention in defendant's brief on appeal that the trial court "merely noted" the plaintiff's law degree and did not value it as an asset subject to division is belied by the conclusions of law quoted in the text of the opinion, as well as by the fact that the award to the defendant exceeded the net value of the estate if the value of the degree as found by the trial court is excluded from the marital assets.

[9] *Manske v. Manske,* 6 Wis.2d 605, 95 N.W.2d 401 (1959).

[10] *Kronforst v. Kronforst,* 21 Wis.2d 54, 123 N.W.2d 528 (1963); *Knutson v. Knutson,* 15 Wis.2d 115, 121, 111 N.W.2d 905 (1961).

The plaintiff's brief indicates that he raises the issue of grounds because the final judgment is "so totally against him that it appears that the divorce was given to the defendant to rationalize the judgment which so much favored her."

We find no reason to believe that the trial court's award to the defendant of more than 100 percent of the net marital estate, excluding the value assigned to the law degree, was based upon a comparison of the relative fault of the parties. Rather, it is apparent from the court's conclusions of law, quoted above, that it intended to divide the estate equally, and then to award the defendant an additional sum to recompense her for her financial contribution to the support of the family and for the postponement of her education while the plaintiff obtained his law degree.

We find it unnecessary to detail in this opinion the specific instances of cruel and inhuman treatment claimed by each party. We have examined the record, and conclude that both parties engaged in conduct which contributed to the dissolution of their marriage. While we might have reached a different result on this issue, the trial court was entitled to balance the equities as it saw them, and its findings must be upheld unless they are against the great weight and clear preponderance of the evidence. *Heiting v. Heiting,* 64 Wis.2d 110, 117, 218 N.W.2d 334, 338 (1974). As the supreme court said in that case:

In making these rather delicate determinations as well as a proper evaluation of the testimony and the demeanor of the parties and other witnesses as to the grounds for divorce, the trial judge, by his face-to-face observations, is in a much superior position to make the findings and conclusions than the members of an appellate court who depend solely upon an impersonal record.

Under the applicable standard of review we conclude that the trial court's findings as to the relative fault of the parties cannot be upset.

## Valuation of Professional Degree

The test on appeal of a property division is whether the trial court abused its discretion in making the award. *Dean v. Dean,* 87 Wis.2d 854, 275 N.W.2d 902 (1979) ; *Leighton v. Leighton,* 81 Wis.2d 620, 261 N.W. 2d 457 (1978). Such an abuse occurs when the trial court fails to consider proper factors, makes a mistake or error with respect to the facts upon which the division is made, or when the division is, under the circumstances, either excessive or inadequate. *Perrenoud v. Perrenoud,* 82 Wis.2d 36, 46, 260 N.W.2d 658 (1978). We conclude that the trial court abused its discretion in valuing the plaintiff's law degree as an asset in the marital estate and in awarding the defendant property exceeding the net value of the properly included assets.

The courts in those few jurisdictions which have considered the issue presented on this appeal have taken a variety of approaches in dealing with it. The majority of those jurisdictions have held that a professional degree is not "property" subject to division after the dissolution of a marriage. *In re Marriage of McManama,* 399 N.E.2d 371 (Ind. 1980) ; *In re Marriage of Aufmuth,* 89 Cal. App.3d 446, 152 Cal. Rptr. 668 (1979) ; *In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75 (1978) ; *Moss v. Moss,* 80 Mich. App. 693, 264 N.W.2d 97 (1978) ; *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975) ; *Todd v. Todd,* 272 Cal. App.2d 786, 78 Cal. Rptr. 131 (1969). The rationale of these cases is perhaps best expressed by the majority opinion in *In re Marriage of Graham, supra:*

An educational degree . . . is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term. 574 P.2d at 77.

A further rationale was advanced by the California Court of Appeals in *Aufmuth, supra,* which observed that valuing a professional degree as an asset in the marital estate would necessarily require a division of the post-divorce earnings and efforts of the degree-holder. This result, the court said, would be inconsistent with the philosophy that only assets acquired during the marriage are subject to division.[11] *Accord, In re Marriage of McManama, supra. See also Todd, supra,* which held that a professional education is "[a]t best . . . an intangible property right, the value of which, because of its character, cannot have a monetary value placed upon it for division between spouses." 78 Cal. Rptr. at 135.

We are aware of only two cases which have flatly held, despite these countervailing considerations, that a professional education may constitute an asset subject to

[11] Although California is a community property state, Wisconsin shares this philosophy. *See Johnson v. Johnson,* 78 Wis.2d 137, 143, 254 N.W.2d 198 (1977), which held that it would be improper to include the accounts receivable of a medical clinic, payable in the future as "salary," in the valuation of a doctor's present assets. *See also Bussewitz v. Bussewitz,* 75 Wis.2d 78, 82, 248 N.W.2d 417, 420 (1977), holding that the marital estate consists of the "assets of the parties *as they exist at the time of the divorce.*" [Emphasis supplied.]

division in a divorce action:[12] *In re the Marriage of Horstmann,* 263 N.W.2d 885 (Iowa 1978) ; *Inman v. Inman,* 578 S.W.2d 266 (Ky. App. 1979).

The trial court relied upon *Horstmann, supra,* in which the Iowa Supreme Court agreed with the majority in *In re Marriage of Graham, supra,* that a law degree and admission to the bar were not themselves assets subject to division. *Horstmann* held, however, that "it is the *potential* for increase in future earning capacity made possible by the law degree and certificate of admission conferred upon the husband with the aid of his wife's efforts which constitutes the asset for distribution by the court." 263 N.W.2d at 891. [Emphasis supplied.] Noting that the couple had acquired no assets during the marriage other than the husband's increased earning capacity, the court applied a "cost approach" in approving an award to the wife of $18,000, which represented the amount of money contributed by the wife and spent by the husband in obtaining his law degree. 263 N.W.2d at 891.

In *Inman, supra,* the Kentucky Court of Appeals employed a similar logic in another no-asset case. The court observed that a lack of assets is frequently a common denominator in cases where divorce follows soon after one spouse completes a professional education with

[12] Courts in Michigan, Colorado and Oklahoma have utilized a different method of recompensing a wife's contribution to her husband's professional degree, by approving awards in the nature of "gross alimony," regardless of the wife's technical disentitlement to alimony because, for instance, of remarriage. *Moss v. Moss,* 80 Mich. App. 693, 264 N.W.2d 97 (1978); *Greer v. Greer,* 32 Col. App. 196, 510 P.2d 905 (1973) ; *Hubbard v. Hubbard,* 603 P.2d 747 (Okla. 1979). *See also Diment v. Diment,* 531 P.2d 1071 (Okla. Ct. App. 1974), discussed in N. Erickson, *Spousal Support Toward the Realization of Educational Goals: How the Law Can Ensure Reciprocity,* 1978 Wis. L. Rev. 947, 964–65, and in Note, 13 Tulsa L. Rev. 646, 654–55 (1978). We find no Wisconsin authority in support of this approach.

the financial assistance of the other spouse. It also noted that in such cases the spouse would not normally be entitled to alimony because he or she would be self-supporting. The court expressed "strong reservations about placing a professional license in the category of marital property," but said:

In spite of these reservations, . . . we feel that there are certain instances in which treating a professional license as marital property is the only way in which a court can achieve an equitable result. 578 S.W.2d at 268.

*Inman, supra,* held that the wife was entitled to a return on her "monetary investment" in the husband's dental degree, measured by "the amount spent for direct support and school expenses during the period of education, plus reasonable interest and adjustments for inflation." 578 S.W.2d at 269. It cautioned, however, that such an approach would not be appropriate in all cases:

Proper guidelines for determining whether a marital property classification is proper in a particular instance might include whether there is more tangible marital property whose division would work equity, and the extent to which there was reciprocal aid. Spouse A's interest in spouse B's earning capacity might be partially or totally extinguished if spouse B had returned the favor and helped to put spouse A in the position of having a saleable skill. Another important factor to consider might be the extent to which the nonlicenseholder has already or otherwise benefited financially from his or her spouse's earning capacity, or is eligible for maintenance. These guidelines are meant to be illustrative, not exhaustive. 578 S.W.2d at 269.

We do not find the reasoning of *Horstmann, supra,* and *Inman, supra,* persuasive. We agree that equity compels some form of remuneration for a spouse whose contributions to the marriage have significantly exceeded those of the mate. We cannot agree, however, that equi-

ty is served by attempting to place a dollar value on something so intangible as a professional education, degree, or license. The difficulties inherent in that attempt are illustrated by this case. There is no evidence in the record which supports the trial court's finding that the value of the plaintiff's law degree is worth "at least" $14,316 or any other amount.

The "cost approach" employed by *Inman, supra,* and *Horstmann, supra,* presumes that the value of a degree is the amount of money spent in obtaining it. We think this presumption is not warranted. It fails to consider the scholastic efforts and acumen of the degree holder, which may well have a bearing on the income-yielding potential of the education. It treats the parties as though they were strictly business partners, one of whom has made a calculated investment in the commodity of the other's professional training, expecting a dollar for dollar return. We do not think that most marital planning is so coldly undertaken. As the supreme court said in *Lacey v. Lacey,* 45 Wis.2d 378, 383, 173 N.W.2d 142, 145 (1970) :

In determining the proportion of contribution by husband and by wife in the acquisition of property, more than economic factors are involved. We do not deal with two people with no more in common than two strangers or business associates . . . . The formula for division derives from the facts of the individual case.

Other approaches for valuing a professional degree have been suggested[13] and attempted.[14] We think they

[13] *See* T. Schafer, *Wife Works So Husband Can Go To Law School: Should She Be Taken In As A "Partner" When "Esq." Is Followed By Divorce?* 1975 Comm. Prop. J. 85; N. Erickson, *Spousal Support Toward The Realization Of Educational Goals: How The Law Can Ensure Reciprocity,* 1978 Wis. L. Rev. 947, Note, 11 Conn. L. Rev. 62 (1978); Note, 13 Tulsa L. Rev. 646 (1978).

[14] In both *Todd v. Todd,* 272 Cal. App. 786, 78 Cal. Rptr. 131 (1969) and *In re Marriage of Graham,* 194 Colo. 429, 574 P.2d

share the disadvantage of being wholly speculative. Whether a professional education is and will be of future value to its recipient is a matter resting on factors which are at best difficult to anticipate or measure. A person qualified by education for a given profession may choose not to practice it, may fail at it, or may practice in a specialty, location or manner which generates less than the average income enjoyed by fellow professionals.[15] The potential worth of the education may never be realized for these or many other reasons. An award based upon the prediction of the degree holder's success at the chosen field may bear no relationship to the reality he or she faces after the divorce. Unlike an award of alimony, which can be adjusted after divorce to reflect unanticipated changes in the parties' circumstances, a property division may not.[16] The potential for inequity to the failed professional or one who changes careers is at once apparent; his or her spouse will have been awarded a share of something which never existed in any real sense.

In addition to the difficulties inherent in attempting to place a valuation on an educational degree, we agree

75 (1978), discussed in Note, 11 Conn. L. Rev. 62 (1978), the wife introduced expert testimony concerning the value of the husband's education based on projected earnings with and without the professional degree acquired during the marriage. The appellate courts in both cases rejected the attempt at valuation, and held that the degree was not a marital asset.

[15] The supreme court has held, in the context of a claim for alimony and support, that a divorced spouse "should be allowed a fair choice of a means of livelihood and to pursue what he honestly feels are his best opportunities even though he might for the present, at least, be working for a lesser financial return." *Balaam v. Balaam*, 52 Wis.2d 20, 28, 187 N.W.2d 867, 871 (1971).

[16] Former sec. 247.32, Stats. (1975) provided that "the provisions of a judgment with respect to final division of property [shall not] be subject to revision or modification." Present sec. 767.32, Stats., contains the identical provision.

with the plaintiff's contention, and with the conclusion of the courts in California and Indiana,[17] that a division based upon such a valuation necessarily involves a "division" of post-divorce earnings. We find no statutory or other authority for this result. Former sec. 247.26, Stats. (1975),[18] authorized the court to divide the existing estate of the parties and to award alimony under stated conditions. It did not authorize a court which has determined that alimony is not warranted to surcharge one party by awarding the other party property in excess of the net value of the marital estate, thereby creating what amounts to a "lien" on future earnings. As the Indiana Supreme Court observed in construing a comparable statute under similar circumstances:

[T]he factors set out in the statute . . . do not lend themselves to the interpretation that future income is property and therefore divisible. The thirty-six hundred dollar . . . award to the wife is above the total value of the marital assets as shown by the evidence at trial. It

[17] *In re Marriage of Aufmuth,* 89 Cal. App.3d 446, 152 Cal. Rptr. 668 (1979); *In re Marriage of Fortier,* 34 Cal. App.3d 384, 109 Cal. Rptr. 915 (1973); *Todd v. Todd,* 272 Cal. App.2d 786, 78 Cal. Rptr. 131 (1969); *In re Marriage of McManama,* 399 N.E.2d 371 (Ind. 1980).

[18] Former sec. 247.26, Stats. (1975), provided in relevant part:
Alimony, property division. Upon every judgment of divorce or legal separation, the court may . . . further adjudge for a limited period of time to either party such alimony out of the property or income of the other party for support and maintenance, except no alimony shall be granted to a party guilty of adultery not condoned . . . . The court may also finally divide and distribute the estate, both real and personal, of either party between the parties and divest and transfer the title of any thereof accordingly, after having given due regard to the legal and equitable rights of each party, the length of the marriage, the age and health of the parties, the liability of either party for debts or support of children, their respective abilities and estates, whether the property award is in lieu of or in addition to alimony, the character and situation of the parties and all the circumstances of the case . . . .

is apparent . . . that this amount would be paid as an award of the husband's future income. The only way the trial court could have given any additional amounts to the wife at that time would have been by way of an award of either support or maintenance . . . . *In re Marriage of McManama,* 399 N.E.2d 371, 373 (Ind. 1980).

We concur with this conclusion.

While we hold that the trial court erred in valuing the plaintiff's law degree as an asset of the marital estate, it is our opinion that both the defendant's financial contributions to the family while he obtained it and the present disparity in the parties' income earning capacities resulting from the postponement of the defendant's own education are appropriate factors for consideration in arriving at a property division, and in determining whether alimony (now "maintenance") is appropriate. The Wisconsin Supreme Court has said that the goal in determining that division is to reach a "fair, equitable and just" result, *Bussewitz v. Bussewitz,* 75 Wis.2d 78, 82, 248 N.W.2d 417, 420 (1977), and that "each case must be decided upon the material facts and factors present therein." 75 Wis.2d at 85, 248 N.W.2d at 422. The same factors relevant to a property division are to be considered in determining an alimony award. *Van Wyk v. Van Wyk,* 86 Wis.2d 100, 108, 271 N.W.2d 860 (1978) ; *Shetney v. Shetney,* 49 Wis.2d 26, 32, 181 N.W. 2d 516 (1970).

In *Lacey, supra,* the supreme court set forth a wide variety of appropriate factors for consideration in making a property division, noting that "an encyclopedic listing of all possible factors" was probably impossible, and that "[w]hatever is material and relevant in establishing a fair and equitable basis for division of the property of the parties may be considered." 45 Wis.2d at 383, 173 N.W.2d at 145. The factors enunciated in *Lacey* were

subsequently codified in former sec. 247.26, Stats. (1975), which provided that "all the circumstances of the case" should be given "due regard."

We note that under present sec. 767.255[19] and sec. 767.26(1), Stats.,[20] contributions by one spouse to the education or increased earning power of the other spouse, together with the earning capacities and educational needs of each spouse, are specifically mentioned as factors to be considered in property divisions and awards of maintenance. While those sections are not applicable to this

---

[19] Section 767.255, Stats., provides that:

[T]he court shall presume [that the marital estate] . . . is to be divided equally between the parties, but may alter this distribution . . . after considering:

. . . .

(5) The contribution by one party to the education, training or increased earning power of the other.

(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

[20] Section 767.26(1), Stats., provides in relevant part that the court may grant maintenance payments after considering:

(d) The educational level of each party at the time of marriage and at the time the action is commenced.

(e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

. . . .

(h) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

case, we conclude that the standards set forth in their predecessors and in *Lacey, supra,* are sufficiently broad to warrant considering those factors in this case. *See also Van Wyk,* 86 Wis.2d 100; *Shetney,* 49 Wis.2d 26; *Ausman v. Ausman,* 31 Wis.2d 79, 141 N.W.2d 869 (1966); *Stern,* 331 A.2d 257.

Consideration of those factors may well entitle the defendant to an award of more than fifty percent of the marital estate in this case. We are unable to determine whether and to what extent that may be so because, as noted above, there was conflicting testimony concerning the relative financial and nonfinancial contributions of the parties, and the manner in which the trial court resolved those conflicts is not discernible from the record. For this reason alone the case must be remanded for new findings and a division consistent with this opinion. In addition, the trial court's determination that the defendant was not entitled to alimony was based in part upon a property division which we have vacated. The supreme court has held that the division of a marital estate and a decision respecting alimony are closely related. *Van Wyk, supra,* at 110; *Johnson v. Johnson,* 78 Wis.2d 137, 145, 254 N.W.2d 198 (1977). A redetermination of this issue may be appropriate on remand, depending on the parties' current circumstances, unless the trial court finds that the defendant is otherwise barred under former sec. 247.26, Stats. (1975), from claiming alimony.[21]

In making either determination on remand, the trial court should consider the relative financial and other contributions of the parties during the whole course of the marriage, and not merely during the period of the plaintiff's schooling. The defendant's excess in earnings during the early years of the marriage, as well as

---

[21] *See* n. 6, *supra.*

the inferior earning capacity resulting from the postponement of her education, were at least partially compensated for during the last year and one-half of the marriage when she attended school and earned an accounting degree. This fact appears to have been accorded no weight in the trial court's initial determination, and is entitled to consideration.

*By the Court.*—That portion of the judgment pertaining to the property division and alimony is reversed and vacated and the case is remanded for proceedings consistent with this opinion. In all other respects the judgment is affirmed. Costs are not allowed to either party.

DYKMAN, J. (Concurring.) I agree with the majority opinion that a trial court may not award more than 100 percent of the property to the defendant, but I disagree with the majority's conclusion that the plaintiff's law degree may not be considered a marital asset under the predecessor to present secs. 767.255 and 767.-26, Stats.

The majority opinion does not comport with decisions of the Wisconsin Supreme Court which allow valuation of future interests in property for purposes of a property settlement and it unnecessarily limits the trial court's options in providing an equitable settlement for parties in a divorce action.

In *Leighton v. Leighton,* 81 Wis.2d 620, 261 N.W.2d 457 (1978), the Wisconsin court concluded under the same divorce law which applies to this case, that an unvested interest in a pension fund could be included in a property division. The majority in this case lists numerous contingencies which might reduce the actual earning power of the plaintiff. The existence of contingencies is not a basis for excluding an asset in a prop-

erty division. As the court in *Leighton,* 81 Wis.2d at 634–35, 261 N.W.2d at 464, stated:

[I]n cases dealing with other contingent interests, such as a remainder of interest in a testamentary trust, or an interest in a profit-sharing trust, we have held that the fact that the interest is contingent does not mean it may be ignored in property divisions in divorce actions. (Footnotes omitted.)

Likewise, the method of valuing a professional degree can be no more obscure than that of valuing unvested interests in pension plans. [1]

The question to be asked when considering whether to value a future interest is the probability that the person will continue to enjoy what he or she now enjoys. *Leighton,* 81 Wis.2d at 635. I believe it is probable that the plaintiff will continue to enjoy the benefits of his law degree.

---

[1] *See Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978), for a description of how to determine present values of such interests. *Bloomer,* by reversing a trial court's valuation of a pension under the rule set forth in *Parsons v. Parsons,* 68 Wis.2d 744, 229 N.W.2d 629 (1975), allows a trial court to divide property the court expects a party to acquire after the date of his or her divorce:

If the value of Herbert's interest in the fund would be $8,047.61 *when distributed* [emphasis in original] in twenty-three years, then the trial court would undoubtedly be right in discounting the $8,047.61 for twenty-three years at 5 percent. The error in this method is that *the $8,047.61 will continue to accrue interest over the next twenty-three years.* [Emphasis supplied.] Assuming a 5 percent rate of growth, the value of the fund will approximately triple over that period. If we were to take the approximately tripled figure, twenty-three years in the future, and then discount *that* [emphasis in original] figure at 5 percent, we would end up where we started, with a present value of approximately $8,047.61. *Bloomer,* 84 Wis.2d at 133, 267 N.W.2d at 240.

Valuing a professional degree is no more speculative than assuming that a person will remain alive and continue with his or her employment with a present employer until retirement.

More importantly, by precluding a trial court from considering a law degree or any degree as an asset for purposes of a property settlement, in some circumstances persons who support their spouse's educational efforts could not be compensated. The options available under the majority's decision are either: (1) to consider the educational support as a factor in adjusting the 50/50 division of property; or, (2) to use the educational support as a basis for maintenance payments.

There are difficulties with either option. In order for a trial court to make such adjustments in the property division, there must be sufficient assets to adequately compensate the supporting spouse. For a court to use the educational support as a basis for maintenance payments the party must have established some need for the maintenance.[2]

It is not difficult to find a situation in which neither of these prerequisites is met. It is common to find couples with no property or children, where one spouse is gainfully employed while the other obtains an education. If the divorce is obtained upon receipt of the degree, there are no significant assets which the court can award the supporting spouse as compensation. The supporting spouse would have a difficult time establishing need for maintenance payments if he or she is employed and there are no children. Thus, the court's inability to consider the degree as a marital asset would

---

[2] The majority implies that it is not necessary to establish "need" before a court may award maintenance payments. However, the case law strongly indicates that such a need must exist. As the court stated in *Anderson v. Anderson*, 72 Wis.2d 631, 642–43, 242 N.W.2d 165, 171 (1976), "Both alimony and support payments are fixed on the basis of the needs of the wife and children and ability of the husband to pay. These needs are ordinarily established by a consideration of the wife's assets and income, her special needs, the age and health of both the wife and children and their customary station in life."

result in a situation in which the income of one spouse is used for the benefit of the other spouse with no method of allowing compensation.

Such a limitation on the trial court's discretion in providing an equitable solution is unwarranted.

I would reverse because a court cannot award more than 100 percent of a couple's property and because the court's method of valuing the plaintiff's law degree was entirely speculative.