**In re the Marriage of Bruce W. DAVEY, Petitioner, Respondent,**

**v.**

**Katherine W. DAVEY, Appellant.**

**No. C2–87–508.**

Court of Appeals of Minnesota.

Nov. 10, 1987.
Review Denied Jan. 20, 1988.

Ronald W. Benson, Winona, for petitioner, respondent.

Stephen J. Delano, Winona, for appellant.

Heard, considered and decided by POPOVICH, C.J., and RANDALL and STONE,* JJ.

## OPINION

BRUCE C. STONE, Acting Judge.

Appeal arises from a dissolution action. The trial court's order determining maintenance, denying appellant reimbursement for funds spent on respondent's medical education, refusing appellant future interest in respondent's medical practice and awarding appellant one-half of net proceeds from existing accounts receivable is affirmed.

## FACTS

Appellant Katherine W. Davey and respondent Bruce W. Davey were married in the State of Virginia in May 1967. Respondent was serving in the army at the time. They have a son, Kristopher, born January 17, 1972. At the time of dissolution, appellant was 40 years old and respondent 41.

Respondent began medical school at Northwestern University in Chicago in September 1968. Respondent remained in medical school from 1968 through 1972. During respondent's medical school training; appellant contributed a gross income of $36,000 which was earned through her employment as a medical technologist. In addition to appellant's earned income, she received an inheritance of $8,500 which was used for family expenses and respondent's education. Appellant has not been employed since 1972.

While attending medical school, respondent worked part-time earning approximately $2,000. Respondent was also a recipient of $5,520 through the GI Bill.

After graduating from medical school, respondent interned at the University of Utah in Salt Lake City. The Daveys spent nearly five years in Salt Lake City while respondent interned and served a four-year residency in orthopedic surgery. During the residency, the family income ranged between $15,000 and $19,000 per year.

Respondent estimates his cost for medical school at a total of $20,000. Additional costs for education during the internship and residency are approximated at $500 to $600 per year.

In 1977, the Daveys moved to Winona, Minnesota where respondent set up private medical practice as an orthopedic surgeon. The practice is operated as a corporation with respondent as sole owner.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Appellant is near completion of a masters degree in graphic arts. She is attending the University of Wisconsin in Madison. Appellant suffers from an eating disorder, bulimia, for which she has undergone therapy.

The trial court awarded appellant $2,000 per month for maintenance for the purpose of assisting her in obtaining a masters degree and employment within one month from obtaining the degree. The trial court specifically reserved jurisdiction to determine the exact date the degree was obtained (which according to counsel at oral argument was to be soon), appellant's employment status and the extent of respondent's obligation for providing maintenance. The trial court did not grant relief to appellant in terms of future ownership interest in respondent's medical practice nor did it grant reimbursement for appellant's financial contribution to respondent's medical education.

The judgment and decree provided for each party to receive one-half of existing accounts receivable owed respondent's medical practice after accounting costs have been deducted.

### ISSUES

1. Did the trial court err in determining the amount and duration of maintenance awarded appellant?

2. Did the trial court err in refusing to grant appellant reimbursement for funds expended by her for respondent's medical education?

3. Did the trial court err in refusing to grant appellant a future interest in respondent's medical practice?

4. Did the trial court abuse its discretion in evaluating respondent's medical practice and awarding appellant one-half of the book value of accounts receivable?

### ANALYSIS

1. A trial court has wide discretion in determining spousal maintenance and its determination is final unless the court abused its discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982);

*see also Haasken v. Haasken*, 396 N.W.2d 253, 259 (Minn.Ct.App.1986). However, the trial court's determination is examined in light of the factors set forth in Minn.Stat. § 518.552. Under this section, the trial court, among other factors, is to "balance the financial needs of the spouse seeking maintenance and his or her ability to meet those needs against the financial condition of the spouse providing the maintenance. Particular attention is given to periods of training or education." *Griepp v. Griepp*, 381 N.W.2d 865, 869 (Minn.Ct.App.1986).

The Minnesota legislature has provided eight specific factors to be considered by the trial court when awarding maintenance:

The maintenance order shall be in amounts and for periods of time, either temporary or permanent, as the court deems just, without regard to marital misconduct, and after considering all relevant factors including:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;

(c) the standard of living established during the marriage;

(d) the duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the loss of earnings, seniority, retirement benefits, and other employment opportunities foregone by the spouse seeking spousal maintenance;

(f) the age, and the physical and emotional condition of the spouse seeking maintenance;

(g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and

(h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business.

Minn.Stat. § 518.552, subd. 2.

At the time of trial, Minn.Stat. § 518.552, subd. 3 (1985) provided:

Nothing in this section shall be construed to favor a temporary award of maintenance over a permanent award, where the factors under subd. 2 justify a permanent award. Where there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification.

Appellant argues the trial court did not make proper findings with regard to the factors set forth in Minn.Stat. § 518.552 because subsections (d), (e), (f), (g) and (h) were not addressed. However, finding XXXV of the trial court's findings of fact *does* address appellant's "education, skills or experience" and the time elapsed since she last participated in employment for which she was previously trained (factors enumerated in subsection (d)). Subsection (e) is not specifically addressed by the trial court, but subsection (f) is in part:

[Appellant's] health is also generally good, except that she experiences an eating disorder which may affect her insurability and therefore create a need for her to remain covered by plaintiff's health insurance policy.

There are no specific findings for subsections (g) and (h).

The Minnesota Supreme Court has reasoned:

No single statutory factor for determining the type or amount of maintenance is dispositive.

*Erlandson,* 318 N.W.2d at 39.

Furthermore, this court has clearly stated:

In determining the amount and duration of the maintenance award, *the court is required* to consider the factors set forth in Minn.Stat. § 518.552, subd. 2 (1982).

*Elwell v. Elwell,* 372 N.W.2d 67, 69–70 (Minn.Ct.App.1985) (emphasis added).

The trial court properly reserved jurisdiction to hear the matter of maintenance on request of either party to determine the date appellant received her masters degree, her employment status and respondent's corresponding obligation for providing maintenance. If a hearing is requested under reservation of jurisdiction, *all* factors set forth in Minn.Stat. § 518.552, subd. 2 must be addressed.

■ 2. Appellant urges this court to apply *DeLaRosa v. DeLaRosa,* 309 N.W.2d 755 (Minn.1981), by awarding an equitable recovery of financial support provided to respondent during medical training. However, the facts of this matter are clearly distinguishable from *DeLaRosa.*

First, the *DeLaRosa* marriage lasted a little over five years. During the entire time, the working spouse supported the student spouse. *DeLaRosa,* 309 N.W.2d at 757. The Daveys were married nearly 20 years. Appellant has not worked outside the home since 1972.

Second, in *DeLaRosa,* there was *no* property to be divided, and the wife, a newspaper reporter, was not eligible for maintenance. In the instant case, there is property available for division, and appellant has been awarded maintenance. Under these circumstances, the *DeLaRosa* rationale of providing something to a spouse who would otherwise receive nothing is inapplicable.

Third, the *DeLaRosa* court emphasized the sacrifice made by the working spouse in expectation of a higher standard of living once the student spouse obtained his degree. *Id.* at 758. In *DeLaRosa,* the

working spouse never realized her expectations. On the other hand, appellant has had an opportunity to enjoy a standard of living which did not, for a number of years, require her employment outside the home, provided a comfortable environment, opportunities for travel and other recreation.

Through the enjoyment of this standard of living during respondent's practice of orthopedic surgery, appellant's share in the marital assets accumulated during this marriage, and the assistance provided to her by respondent toward obtaining a master's degree, appellant has been reimbursed for the assistance which she provided to respondent in obtaining his education.

In distinguishing *DeLaRosa* from the present matter, the trial court did not err in refusing to grant appellant reimbursement for funds expended for respondent's medical education.

3. Appellant claims entitlement to a percent of respondent's future earnings, arguing the medical degree held by respondent is a right acquired during marriage and therefore marital property.

■ While a few jurisdictions agree with appellant, Minnesota has yet to recognize a professional degree or increased earning capacity as a marital asset. The more widely held view is that neither the education nor the degree itself has value as an asset that can be quantified in a divorce proceeding. *DeWitt v. DeWitt*, 98 Wis.2d 44, 296 N.W.2d 761 (Wis.Ct.App.1980). The *DeWitt* court reasoned:

> [V]aluing a professional degree as an asset in the marital estate would necessarily require a division of the post-divorce earnings and efforts of the degree-holder. This result * * * would be inconsistent with the philosophy that only assets acquired during the marriage are subject to division.

*Id.* at 54, 296 N.W.2d at 766 (footnote omitted).

Even though Minnesota does not at this time recognize the acquisition of a professional degree during marriage as a marital asset per se, it should be considered by the trial court as a "relevant factor" in determining a maintenance award.

4. Appellant contends the trial court erred in not awarding one-half the "book value" of the accounts receivable of respondent's medical practice to her. Respondent argues the trial court was correct in taking into account the costs of collection and the likelihood some of the accounts receivable would never be paid in determining the value of the accounts receivable.

■ The trial court's method of valuation must be affirmed if it has an acceptable basis in fact and principle even though a reviewing court may have adopted a different approach. *Bollenbach v. Bollenbach*, 285 Minn. 418, 426–427, 175 N.W.2d 148, 154 (1970); *see also Castonguay v. Castonguay*, 306 N.W.2d 143, 147 (Minn. 1981).

■ The trial court elected to base its award on net proceeds from accounts receivable. The net proceeds will become fact upon receipt and deduction of costs for production, collection and payment of taxes. Consequently, the award is based on "hard figures" and is not speculative. Respondent is obligated to provide an annual accounting to appellant.

## DECISION

The trial court's determination of the duration and amount of maintenance, denial of reimbursement for respondent's medical education costs, refusal to value respondent's degree as a marital asset requiring division of postdissolution earnings, and award of 50 percent of net proceeds from outstanding accounts receivable are affirmed.

Affirmed.