Knutson, Respondent, v. Knutson, Appellant.

*November 2—November 28, 1961.*

For the appellant there was a brief by *Maroney & Schiro* of Milwaukee, attorneys, and *John J. Gibbons* of Denver, Colorado, of counsel, and oral argument by *Thomas P. Maroney* and *Anthony W. Schiro*.

For the respondent there was a brief and oral argument by *Ray T. McCann* of Milwaukee.

CURRIE, J. Defendant's net income for the year 1958, the last full year he practiced in Milwaukee, was $46,530.48. After moving to New Mexico, he took the examination given by the New Mexico board of medical examiners, but failed to pass. This prevented him from practicing his profession in that state, and he then accepted employment in a United States Veterans Hospital in New Mexico as a radiologist at a salary of $400 per month. He was so employed at time of trial, although he expected to again take the board examination after waiting the one year required of failing candidates.

The circuit court made this finding of fact:

"That the defendant wilfully left the state of Wisconsin to practice his profession in New Mexico, and that said movement on the part of the defendant was for the express purpose of intentionally decreasing his earnings in order to attempt to prevent the plaintiff from obtaining a substantial allowance for alimony, and had said defendant continued his practice in Wisconsin, his gross income would have continued at the rate that the same was for the years 1958 and 1959."

Defendant made certain admissions in his adverse examination before trial which would support the foregoing finding with respect to his reason for leaving Wisconsin. In

such a situation, a court is not required to determine alimony on the basis of the husband's present income. In a proper case the amount of alimony may be based upon earning capacity or prospective earnings. *Gordon v. Gordon* (1955), 270 Wis. 332, 346, 71 N. W. (2d) 386. We approve of the holding of the Pennsylvania superior court in *Appleton v. Appleton* (1959), 191 Pa. Super. 95, 100, 155 Atl. (2d) 394, 396, when it stated: "This appellee cannot wilfully now choose to retire from gainful employment and deny his wife the alimony it is his duty to attempt to supply."

As of November 1, 1961, defendant was $18,000 in arrearages in paying alimony under the judgment. While the divorce decree, granting plaintiff wife a substantial property division and alimony of $1,000 per month, would be high even if defendant were still earning $46,000 per year, it might not constitute an abuse of discretion. However, under the present circumstances we are of the opinion that fixing so high an alimony is likely to defeat its purpose and result in plaintiff's actually collecting none. This is because it will produce such a mountain of debt for delinquent alimony payments that it is likely to deter defendant from attempting to again build up a remunerative practice of his profession.

It is our conclusion that the alimony provision in the judgment should be modified so as to make the alimony payments $500 per month commencing June 1, 1960. This is the same monthly amount at which the family court commissioner had fixed the temporary alimony, and also is the amount originally requested by the plaintiff.

We turn now to the property division. The schedule below sets forth the division made by the trial court in the judgment:

| Assets in the estate | Total | Wife | Husband |
|---|---|---|---|
| Homestead real estate (net) | $27,251.27 | $27,251.27 | $ |
| Cash surrender value of insurance (less policy loans and not including Acacia Mut. policy #774003A) | 10,577.53 | 4,000.00 | 6,577.53 |
| Household furnishings * (no value set) | | | |
| A. T. & T. stock ** | 3,164.00 | 3,164.00 | |
| A. T. & T. dividend check | 29.70 | 29.70 | |
| U. S. savings bond (face value) | 50.00 | 50.00 | |
| Loan outstanding | 5,000.00 | | 5,000.00 |
| Office equipment | 5,800.00 | | 5,800.00 |
| Cash | 10,268.00 | | 10,268.00 |
| Niagara Oil Contributors Agreement * | | | |
| Notice to Marine Nat. Ex. Bank of Inclosure * | | (no value set) | |
| Passbook of First Wis. Nat. Bank savings acct.* | | | |
| Two automobiles (one to each party) | | | |
| Total distribution | $62,140.50 | $34,494.97 | $27,645.53 |
| Per cent | 100% | 55.5% | 44.5% |

* Awarded to plaintiff wife.
** The trial court set no value on this stock, but both briefs refer to a market value of $88 per share as of the time of the divorce.

The lot on which the parties built their home was purchased from plaintiff's parents. Title to the lot was taken by the parties as tenants in common and not as joint tenants. Plaintiff's father testified that prior to her marriage plaintiff had been employed in the personnel department "at Sears & Roebuck," and that some of her earnings had been used to build and furnish the home. The amount of plaintiff's separate estate at time of marriage is not disclosed by the record, but it is unlikely that it could have

been substantial, as she was only twenty-three years old at the time of the marriage. The larger portion of the cost of building the home must have come from defendant's earnings.

There is no merit to plaintiff's contention that one half of the homestead constituted her separate estate and was to be excluded in making the division of estate. This is because, although she held title to an undivided half of the homestead real estate, the greater amount of its value as improved had come from defendant's earnings. So much of the value of the estate of a wife as has been derived from the husband is to be taken into account in making the property division. Sec. 247.26, Stats.

The applicable principle of law to be followed in making a division of estate to be embodied in a divorce decree was well stated in *Manske v. Manske* (1959), 6 Wis. (2d) 605, 607, 95 N. W. (2d) 401:

"The question of property division of an estate in a divorce judgment is one as to which there can be few definitive rules. 'As has often been said, the division of property in divorce cases is a matter peculiarly within the discretion of the trial court and depends upon the circumstances of the particular case.' *Mentzel v. Mentzel* (1958), 4 Wis. (2d) 584, 590, 91 N. W. (2d) 101. 'The general level to start from is one third. Since the early suggestive guide in respect to the matter, it has been pretty well established that a clear third of the whole is a liberal allowance to the wife, subject to be increased or decreased according to special circumstances.' *Gauger v. Gauger* (1914), 157 Wis. 630, 633, 147 N. W. 1075."

In the instant case, plaintiff has been awarded substantial alimony. There are no special circumstances which would warrant an award to her of much more than one third of the divisible estate, after first deducting and awarding to her any separate estate she possessed at time of marriage.

Plaintiff contends that defendant's bad conduct warranted the trial court in making the property division that it did. However, this contention overlooks the established principle that a division of estate should not be used as means of punishment to the "guilty party." *Yasulis v. Yasulis* (1959), 6 Wis. (2d) 249, 253, 94 N. W. (2d) 649.

We deem that the division to the wife in this case was excessive. However, we are in no position to determine a proper division because there are a number of items of property for which the value was not established. Furthermore, as previously mentioned, the amount of plaintiff's separate estate at time of marriage was not determined. If, under our disposition of the case, it becomes necessary for the trial court to make a new division of the estate, evidence should be adduced which will enable the court to make findings with respect to these matters.

Defendant has pursued a course of such contumacious conduct, with respect to payment of temporary and permanent alimony, that this court deems it a factor which must be considered in determining the disposition of this appeal. At the time of trial, defendant was $2,100 in arrears in payment of temporary alimony and had paid but $150 of the $500 attorney fee he had been ordered to pay for plaintiff's benefit. Upon conclusion of the trial, the circuit court found defendant guilty of contempt for failure to pay these amounts, and sentenced him to confinement in the Milwaukee house of correction until he purged himself of such contempt by making the payments. The following day, May 17, 1960, defendant paid the $2,100 temporary alimony and the $350 attorney fee and was released from custody. Since that date, however, he has failed to pay any sum whatever to apply on permanent alimony. While he has questioned the amount of the permanent alimony fixed by the judgment, this does not excuse him from at least having paid

something to apply toward the alimony. He well knew that the income from the property received by plaintiff for division of estate was very meager and that she would need some alimony for her support.

In *Flakall Corp. v. Krause* (1955), 269 Wis. 310, 70 N. W. (2d) 8, we dismissed an appeal because of appellant's contumacious conduct in defying the injunctional provisions in the judgment appealed from, without complying with the conditions for a stay imposed by the trial court. We have determined that, as a condition for granting appellant relief from the instant property division, he shall pay all delinquent permanent alimony. Therefore, it is the judgment of this court that defendant shall have sixty days from the date of the remittitur of the record to the circuit court in which to pay to the clerk of that court all arrearages in alimony. The amount due shall be $500 for each month from June 1, 1960, to the date of payment. If defendant makes such payment in full within the specified period, the circuit court shall redetermine the property division in accordance with this opinion. If defendant fails to make full payment of such arrearage of alimony within the time specified, then the circuit court shall reinstate the property division originally provided in its judgment.

*By the Court.*—That portion of the judgment requiring defendant to pay permanent alimony is modified so as to fix such alimony at $500 per month, and, as so modified, is affirmed; that portion of the judgment providing for a division of estate of the parties is reversed, and the cause remanded for further proceedings in conformity with this opinion. The parties shall pay their own costs on this appeal.