Cathryn L. PAMPERIN, Plaintiff-Appellant,

v.

Earl R. PAMPERIN, Defendant-Respondent.

Court of Appeals

*No. 81-2401. Submitted on briefs January 30, 1983.—
Decided February 23, 1983.*
(Also reported in 331 N.W.2d 648.)

For the plaintiff-appellant the cause was submitted on the briefs of *Steven C. Helland* and *Croak Law Offices* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Scott B. Rasmussen* and *Rasmussen Law Offices* of Beaver Dam.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.    Cathryn (Pamperin) Osheim has appealed from an order amending the 1978 divorce judgment by transferring the custody of her daughter Danielle to her former husband Earl Pamperin and relieving him of his child support obligation.

The matter is before us a second time.  In *Cathryn L. Pamperin v. Earl R. Pamperin,* Nos. 79–956 and 79–1950, slip op. (Wis. Ct. App. Oct. 16, 1980), we reversed an

order denying Cathryn's motion for permission to remove Danielle to Mississippi, where Cathryn lives with her husband, Lt. Osheim, who is on active duty in the air force, an order denying Earl's motion to obtain custody and an order requiring that Danielle live within 100 miles of Juneau, Wisconsin. We remanded for further consideration whether Danielle's welfare would be promoted by removal from Wisconsin. We suggested the desirability of further hearings on the frequency of Lt. Osheim's military transfers and the impact of those transfers on Danielle. We noted that the trial court had made incomplete findings with respect to Earl's request to change custody.

December 8, 1980 the trial court held a pretrial and scheduling conference, following which it ordered a hearing to determine how often Lt. Osheim would be transferred and set a February 16, 1981 trial date. The court ordered the Dodge County Mental Health Center to conduct an evaluation of the parties and Danielle. The hearing began December 30, 1980 and was continued February 4, 1981. February 16, 1981 a scheduling conference was held and the trial was continued to April 15 and 16.

July 22, 1981 Earl advised the trial court that Cathryn had removed Danielle to Mississippi, that he had been denied his visitation rights under the divorce judgment since April 17, 1981 and that Danielle had not attended school since April 11.[1] The court ordered Cathryn to show cause why she should not be found in contempt for

---

[1] The judgment provided in material part:

[T]hat the child's custodian obtain written approval of the parent having visitation rights or permission of the court before establishing a legal residence outside of the state or removing the child from this state for longer than ninety days. Violation of this order may result in the modification of the judgment in respect to custody, child support and visitation rights.

denying Earl his visitation rights, taking Danielle out of school, and removing Danielle from Wisconsin, contrary to sec. 767.245(6), Stats. The order was served on Cathryn's attorney.

The hearing on the order to show cause was held August 3, 1981. Cathryn appeared by attorney, Maryann Schacht, a partner of Cathryn's attorney of record, James Olson. Cathryn did not appear personally. The court found Cathryn in contempt for denying Earl his visitation rights and for removing Danielle from Wisconsin for more than ninety days without permission of the court. A bench warrant for Cathryn's arrest was issued August 11, 1981. The order finding Cathryn in contempt was served on her attorneys.

Notice of trial set for September 10 and 11, 1981 was given to Cathryn's attorney August 13, 1981. August 25 an amended notice of trial set for August 19 and 20 (sic) was given to Cathryn's attorney. August 26 a second amended notice of trial set for October 19 and 20 was given to Cathryn's attorney.

On Earl's motion, September 3, 1981 the trial court ordered Cathryn to show cause why the judgment should not be modified to transfer Danielle's custody to Earl, and why the court should not permit Earl to withhold part of his support payments to defray the expense of his seeking the custody change and the expense of Danielle's return to Wisconsin. The order set a September 15 hearing date. A copy of the order was served on Cathryn's attorneys September 3.

Cathryn did not appear at the September 15 hearing. Attorney Schacht presented the court with a letter from Cathryn, dated September 12, 1981, discharging Attorney Olson as Cathryn's attorney. Attorney Schacht did not participate in the hearing, except to acknowledge the October 19 and 20 trial dates and to acknowledge that her firm no longer represented Cathryn. The trial court

ordered that Earl be permitted to withhold $100 per month of his $190 monthly support obligation to finance his motion to modify the custody order and for an anticipated Christmas trip to visit Danielle in Mississippi. The court deferred the hearing on the motion to change custody until the October 19 trial date previously set for the issues on remand, among which was Earl's original motion for a change of custody.

October 19 and 20, 1981 trial was held on the issues on remand. Cathryn did not appear personally or by counsel. The guardian ad litem for Danielle advised the trial court that he had spoken to Lt. Osheim about a week and a half before the trial, he suggested to Lt. Osheim that Cathryn attend, he was told that Lt. Osheim would discuss it with Cathryn and he had heard nothing further. The court found that Cathryn had discharged her attorney after notice of the trial date had been given. The court found that Danielle's best interests would be served by a transfer of custody to Earl. The court amended the divorce judgment to assign her custody to Earl.

1. *Transfer Of Custody*

The first issue is whether the trial court abused its discretion in transferring custody to Earl. To find an abuse of discretion, we must find either that discretion was not exercised or that there was no reasonable basis for the trial court's decision. *Wisconsin Public Service Corp. v. Krist,* 104 Wis. 2d 381, 395, 311 N.W.2d 624, 631 (1981).

In the prior appeal, we instructed the trial court on remand to use the standard required for an initial determination of custody, because the parties had originally stipulated to custody.[2] Under that standard, each party

---

[2] In *Corcoran v. Corcoran,* 109 Wis. 2d 36, 42–43, 324 N.W.2d 901, 904 (Ct. App. 1982), we concluded that in a proceeding to

bears an equal burden to show that the award of custody to that party is in the child's best interest. *Marotz v. Marotz*, 80 Wis. 2d 477, 485, 259 N.W.2d 524, 529 (1977) ; *Freye v. Freye,* 56 Wis. 2d 193, 196–97, 201 N.W.2d 504, 506 (1972).

As we noted in the prior appeal, the trial court is vested with wide discretion in determining custody, the ultimate criterion being the best interests of the children. *Johnson v. Johnson,* 78 Wis. 2d 137, 148, 254 N.W.2d 198, 204 (1977). What is in the child's best interests is a mixed question of law and fact, with the determination of such matters as psychological factors being a question of fact. *In Matter of Adoption of R.P.R.,* 98 Wis. 2d 613, 618–19, 297 N.W.2d 833, 836 (1980). The trial court's factual determinations will not be reversed unless they are contrary to the great weight and clear preponderance of the evidence. *Id.*

Cathryn Pamperin did not appear personally or by counsel at the October 1981 hearing. The guardian ad litem for Danielle was present, as was Earl Pamperin, his wife Diane, his attorney and his parents. Because the trial court faced unusual problems in dealing with the custody issues, due to the unavailability of Cathryn, Lt. Osheim and Danielle, we set forth the trial court's findings and testimony in considerable detail.

---

change custody under sec. 767.32(2), Stats., the moving party had the burden to prove by "substantial evidence" that the change was necessary for the child's best interest, regardless whether the original custody order was the result of a stipulation or a contested judicial proceeding. Our previous resolution of the issue, which relied on *Marotz v. Marotz,* 80 Wis. 2d 477, 259 N.W.2d 524 (1977), and *Freye v. Freye,* 56 Wis. 2d 193, 201 N.W.2d 504 (1972), although erroneous in light of *Corcoran,* is the law of the case. *See McLeod v. Bertschy,* 34 Wis. 244, 248 (1874) (previous resolution of an issue, although erroneous, is binding as the law of the case).

At the conclusion of the hearing, the trial court found that Earl Pamperin is a fit and suitable custodian for Danielle. The court found that Cathryn and her husband had been given and declined an opportunity to undergo an evaluation at the Mental Health Center. It found that Cathryn removed the child from Wisconsin and that Danielle has been absent from the state since April 1981. It found that the child's removal was not desirable, in that she deserved to have a father in Earl and not to be placed in circumstances where she would attempt to blot him out of her mind and forget about him. It found that removal has resulted in the child's being totally denied visitation rights with her father, that she had had a good relationship with him, and that she has been denied this relationship. The court found that it is in the child's best interests that her custody be transferred to Earl Pamperin. The court specifically considered sec. 767.245 (6), Stats., which provides in substance that if the court grants visitation rights to a parent, a child's custodian must obtain written approval from the parent having visitation rights or court permission to remove the child from the state for a period exceeding ninety days, and that violation of a court order under that subsection may be deemed a change of circumstances under sec. 767.32 allowing the court to modify the judgment with respect to custody.[3] The court concluded that Cathryn had un-

---

[3] Section 767.245 (6), Stats., provides in full:

Whenever the court grants visitation rights to a parent, it shall order the child's custodian to obtain written approval of the parent having visitation rights or permission of the court in order to establish legal residence outside this state or to remove the child from this state for a period of time exceeding 90 days. Such court permission may be granted only after notice to the parent having visitation rights and after opportunity for hearing. Violation of a court order under this subsection may be deemed a change of circumstances under s. 767.32, allowing the court to modify the judgment with respect to custody, child support and

lawfully removed Danielle, and that Danielle's best interests and welfare require transfer of her custody to Earl.[4]

The record shows that the divorce action was commenced in December 1977 and the judgment was entered

visitation rights so as to permit withholding of a portion of the support payments to defray the added expense to the parent with visitation rights of exercising such rights or to modify a custody order.

[4] Other jurisdictions have held that an appellate court may dismiss an appeal from a custody order by a parent who is in contempt of court for violating the custody order by removing the child from the state. *See, e.g., In re Marriage of Marks,* 420 N.E.2d 1184, 1187 (Ill. App. 1981) (mother's appeal dismissed unless within thirty days appeared in court and turned over custody of child to father); *Strange v. Strange,* 464 S.W.2d 216, 219 (Tex. Civ. App. 1970) (husband's appeal dismissed unless within ten days he delivered child to mother); *Michael v. Michael,* 253 N.E.2d 261, 263 (Ind. 1969) (husband's appeal dismissed); *Jackson v. Jackson,* 221 So2d 114, 115 (Ala 1969) (wife's appeal dismissed); *In re Morrell,* 189 N.E.2d 873, 874 (Ohio 1963) (husband's appeal dismissed); *Commonwealth v. Beemer,* 188 A.2d 475, 477 (Pa. Super. 1962) (mother's appeal dismissed); *Henderson v. Henderson,* 107 N.E.2d 773, 774 (Mass. 1952) (mother's appeal dismissed unless within thirty days she returned child to father); In re Dillon, 103 N.Y.S.2d 261, 262 (App. Div. 1951) (mother's appeal dismissed without prejudice to an application to reinstate if within sixty days she submitted herself and children to the jurisdiction of the court); *Pike v. Pike,* 167 P.2d 401, 404 (Wash. 1946) (mother's appeal dismissed unless within ten days returned children to father); *Knoob v. Knoob,* 218 P. 568, 569 (Cal. 1923) (mother's appeal dismissed). There is authority in Wisconsin that an appellate court may dismiss an appeal by a party in contempt of a court order. *See Knutson v. Knutson,* 15 Wis. 2d 115, 122, 111 N.W.2d 905, 909–10 (1961) (judgment reversing property division effective only if appellant husband paid alimony arrears within sixty days); *Flakall Corp. v. Krause,* 269 Wis. 310, 311, 70 N.W. 8, 9 (1955) (court dismissed appeal of party which defied injunctional provisions of judgment appealed from and failed to comply with conditions of stay). We prefer to examine this appeal on the merits because of the importance of bringing this change of custody action to a final termination.

August 23, 1978, pursuant to stipulation, that Cathryn have custody of Danielle, subject to visitation (so far as material) consisting of one weekend per month, one-half of the Christmas holidays and on other specified occasions.

Earl Pamperin testified that Cathryn took Danielle to California, left her, then returned to Wisconsin and started the divorce action. He testified that Cathryn returned Danielle to Wisconsin only after the trial judge had found her in contempt for violating a family court commissioner's order to return Danielle to Wisconsin.[5] He said that before May 1979 Danielle lived with her mother in La Crosse and that he had to travel 168 miles from his Juneau home for visitation. He usually picked Danielle up in La Crosse Friday evenings and took her back Sunday nights. After a custody hearing in May 1979 Danielle lived near Ripon, then in Berlin, then in West Bend and then returned to Berlin. Earl traveled between Juneau and those points for visitation. He was to have had visitation with Danielle during the Christmas holidays in 1979 but was able to obtain visitation only after going through a negotiator at social services. To make the trip to Wisconsin, Danielle had to travel alone by air. Danielle complained about the changes she had to make in going from school to school and making friends at new places. The last time he had seen Danielle was April 17, 1981. He had had no other contact with her, by telephone or letter, even though he sent her an invitation to his wedding with Diane.

Diane Pamperin testified that she married Earl October 13, 1981, that her previous husband had died in a

_____

[5] February 10, 1978 the court found Cathryn in contempt for failing to return Danielle to Wisconsin by January 24, 1978, as ordered by the family court commissioner. Cathryn was sentenced to serve sixty days in the Dodge County Jail, with leave to purge the contempt order by returning Danielle to the state.

car accident, that she has known Danielle since Christmas of 1979, and that she had a satisfactory relationship with Danielle when they were together. She proposes to provide "appropriate mothering" of Danielle.

The guardian ad litem for Danielle called Dr. Linda Marinaccio, a psychologist employed by Dodge County Unified Services. Dr. Marinaccio testified that she had personal contact with Earl and Diane Pamperin but not with Cathryn and Lt. Osheim or Danielle. Cathryn had contacted the office regarding the evaluation ordered by the court and had rejected an offer of an appointment when Lt. Osheim was in the area, and had said they would reschedule it another time when Lt. Osheim was in the area. Without first meeting Danielle, Dr. Marinaccio could not say whether removing Danielle from her mother and transferring custody to Earl Pamperin would have an effect on Danielle. She could not recommend who should have custody. Without meeting Danielle, she could not testify as to the effect of Danielle's living on a military base or whether the trips to which Earl testified would have had an adverse effect on the child. She had no recommendation regarding what would be in Danielle's best interests.

Dr. Marinaccio testified that, because she had not seen him with his daughter, she had no opinion regarding Earl's fitness and suitability as a parent. Although he seemed concerned about his daughter, he also seemed somewhat guarded in his answers to her. Dr. Marinaccio believes Earl wants to maintain a father-child relationship. She observed nothing in his personality or character that appeared to be detrimental to him as a custodial parent. Diane Pamperin seemed prepared to make the necessary adjustments on receiving custody. The doctor observed nothing negative about Diane, but she had no opinion as to whether Diane showed "strong promise . . . as a foster mother."

Dr. Marinaccio agreed that Cathryn's trying to prevent the continuation of father-child relationship could have a detrimental effect on Danielle and that Cathryn was setting a poor example for the child by being in contempt of the court's order by failing to return the child to Wisconsin. She agreed it is probably not good for the child to have been prevented from visiting her father for over six months. She said that the literature she has reviewed indicates that moving has a disruptive influence on the lives of children in that it disrupts peer relationships and makes school adjustments difficult, depending on the child's adjustment and the stability of the family situation. Military moves do not, per se, increase the likelihood of referrals for psychiatric difficulties in children. The expectation of frequent moves in the military system may reduce the amount of adjustment difficulties that military children have. The effect the move will have on the child depends on how well the child is to begin with, the family life of the child, the stability of the family, the relationship of the child with the family and how the family adjusts to the move. Frequent moves cause problems in maintaining a feeling of stability.

Dr. Marinaccio testified that anxieties would normally be expected on the part of the child who has maintained a close association with the noncustodial parent on being suddenly deprived of that association. For a young child, the preferred environment is a stable home without having to move from one community to another.

According to Dr. Marinaccio, if contact is not maintained with the noncustodial parent, the child often tries to form a new family and may substitute a stepparent, pretending that the noncustodial parent does not exist. Dr. Marinaccio agreed, however, that if a young girl has been living throughout her life with her mother and has a good relationship, a transfer to the noncustodial parent could have a permanent and negative effect. A

change in custody could be more dramatic than moving from location to location.

At the conclusion of the testimony, the guardian ad litem took the position that the trial court had insufficient evidence to make findings on proposed change of Danielle's custody. He asserted he lacked sufficient information to make a recommendation whether Danielle's welfare would be promoted by allowing her removal from Wisconsin. He recommended, however, that custody be temporarily transferred to Earl so as to have Danielle physically in Wisconsin.

Cathryn contends on appeal that Dr. Marinaccio's opinions were responsive only to hypothetical questions and did not take into account the actual persons involved. Cathryn contends that an expert's answers to hypothetical questions provide an insufficient basis to change custody. We disagree.

Cathryn, her husband and Danielle did not appear at the hearing. Cathryn put the trial court in a dilemma. The court had to make a decision on the child's best interests based on the only evidence available to it or make no decision, which, under the circumstances, is the result Cathryn apparently wants. The parties had an equal burden under *Marotz* and *Freye, supra,* of demonstrating that Danielle's best interest could be served by the award of custody. Cathryn avoided her burden. The court had only the testimony of Earl Pamperin, his parents, Diane Pamperin and an expert. The expert's testimony consisted of little more than opinions offered without the benefit of interviews with Danielle, Cathryn or Lt. Osheim, but neither the expert nor the trial court had more to work with.

Under the circumstances, we cannot find that the evidence was insufficient to warrant a change of custody. To hold otherwise would enable a custodial parent to prevent a trial court ever from coming to grips with a

requested change of custody, merely by the ploy of absenting himself or herself and present spouse and the child from the court.

The finding that Cathryn removed Danielle to Mississippi without the court's permission for a period in excess of ninety days is uncontested on appeal. The finding that removal interfered with Earl's visitation rights is uncontested and is supported by ample evidence. That preventing Earl from visiting Danielle could have an adverse effect on the child is supported by Dr. Marinaccio's testimony. We have held, under the circumstances, that the doctor's testimony, in this regard, was in response to hypothetical questions does not preclude the court from considering it.

Cathryn's removing Danielle from the state without the court's permission is a factor properly considered in determining Danielle's best interest by the court under sec. 767.245(6), Stats. That Cathryn interfered with Earl's visitation of Danielle is properly considered in determining her best interests. *Marotz,* 80 Wis. 2d at 485–86, 259 N.W.2d at 529–30. *Compare Entwistle v. Entwistle,* 402 N.Y.S.2d 213, 215–16 (App. Div. 1978) (custodial parent's interference with the other's visitation rights is so inconsistent with best interests of child as to raise a strong probability that custodial parent is unfit). There was a reasonable basis in the evidence for the trial court to conclude that promoting Danielle's best interests would be best accomplished by transferring custody to Earl.

Accordingly, we conclude that the trial court did not abuse its discretion in finding that Danielle's best interest would be promoted by granting her custody to Earl.

2. *Jurisdiction And Notice*

It is unclear whether Cathryn claims the trial court lacked jurisdiction over her, as well as inadequate notice

of the hearing held October 19, 1981. Notice of custody proceedings is required by sec. 767.32 (2), Stats., which provides in relevant part, "No order changing the custody of any child shall be entered until after notice of such application has been given the parents of such child . . . and also to the relative or agency that then has the custody of such child. . . ." Section 767.015 also provides that "[a]ll proceedings relating to the custody of children shall comply with the requirements of ch. 822."

Cathryn relies on sec. 767.05 (2), Stats., which provides in relevant part that:

The effect of any determination of a child's custody shall not be binding personally against any parent or guardian unless the parent or guardian has been made personally subject to the jurisdiction of the court in the action as provided under ch. 801 or has been notified under s. 822.05 as provided in s. 822.12. . . .

Cathryn also relies on ch. 822, Stats., the Uniform Child Custody Jurisdiction Act, as adopted by Wisconsin, sec. 822.04 of which provides:

Before making a decree under this chapter, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. *If any of these persons is outside this state, notice and opportunity to be heard shall be given under s. 822.05.* (Emphasis added.)

Section 822.05 (1) provides in relevant part that "[n]otice required for the *exercise of jurisdiction over a person* outside this state shall be given in a manner reasonably calculated to give actual notice . . . ." (Emphasis added.)

Because secs. 767.05 (2) and 822.05 (1), Stats., pertain to notice required to obtain personal jurisdiction over a person outside the state and because the trial court had

obtained personal jurisdiction over Cathryn for purposes of modifying custody as early as 1979, neither statute is applicable. The trial court acquired personal jurisdiction over Cathryn in this modification proceeding when she was personally served with the original order to show cause why custody should not be changed. That service was accomplished March 8, 1979 in La Crosse, Wisconsin. The hearing held in October 1981 was ordered following the remand of this court.

We reject Cathryn's contention that she had inadequate notice of the hearing held in October. Notice of the October 19 hearing date was given by the court to Cathryn's attorneys of record August 26, 1981. Section 801.15(4), Stats., provides that, unless a different period is fixed by statute or by order of the court, notice of a hearing shall be served not later than five days before the time specified for the hearing. Although sec. 822.04, Stats., requires that the court afford "reasonable notice and opportunity to be heard" to parents in custody proceedings, neither that statute nor any other section of ch. 822 specifies a notice of hearing period inconsistent with sec. 801.15(4). The ten-day notice requirement of sec. 822.05(2) is inapplicable because it applies only to "[n]otice under this section," which, as we previously observed, pertains only the notice requirement for the exercise of jurisdiction over the person of a parent outside the state. Even if sec. 822.05(2) applies, the notice was timely because the August 26 notice was given fifty-four days in advance of the October 19 hearing date.

It was also correct for the court to give the notice to Cathryn's attorneys of record. Section 801.14(2), Stats., provides that if a party is represented by an attorney, service of all pleadings and other papers shall be made upon on the attorney unless the court orders personal

service. Nothing in ch. 822, Stats., is inconsistent with with the provisions of sec. 801.14(2).

Although the custody hearing had already been set and notice given August 26, 1981, an order to show cause was served on Cathryn's attorney September 3, 1981. The order set a hearing date of September 15. At the September 15 hearing the court noted the custody issue again raised by the latter order had previously been set for trial on October 19. The court heard the other issue raised by the order to show cause, defraying Earl's expenses. A new notice of trial date was not made necessary by the court's reiteration of the previously set October hearing date.

The record does not support Cathryn's claim that all parties were aware August 3, 1981 that she had discharged her attorney of record and that the notice of the October hearing date therefore had to be served on her personally. Although the trial court recites in the procedural history preceding its findings and conclusions that it was advised at the August 3 hearing that Cathryn had discharged her attorney of record, that statement is contradicted by the record. Cathryn's letter discharging Attorney Olson is part of the record on appeal. The letter is dated September 12, 1981. It was filed with the trial court September 15, 1981. The September 15 hearing transcript discloses that the letter was brought to the court's attention that day.

Cathryn has requested that we grant her costs for contesting motions to supplement the record. We are not convinced that the motions would merit the awarding of costs to Cathryn, and her request is denied.

*By the Court.*—Order affirmed.