143 Wis.2d 849 (1988)
422 N.W.2d 890
IN RE the PATERNITY OF R.L.M.: STATE of Wisconsin, Petitioner-Respondent,
v.
T.J.W., Appellant.
No. 87-0762.
Court of Appeals of Wisconsin.
Submitted on briefs January 20, 1988.
Decided March 9, 1988.
*850 On behalf of the appellant, the cause was submitted on the briefs of Geoffrey Dowse of Ventura, Dowse, Guttormsen & Jambois, of Kenosha.
On behalf of the petitioner-respondent, the cause was submitted on the brief of Dolores A. Bomrad, assistant corporation counsel for Kenosha county.
Before Scott, C.J., Brown, P.J., and Nettesheim, J.
SCOTT, C.J.
This case presents the dilemma of fixing a child support order for a noncustodial parent who is attending college full-time. The trial court ordered T.J.W. to pay $40 per week, but provided that payment of $12 per week would suffice if he remained a full-time student in good standing. Nevertheless, any unpaid amount up to $40 per week would accrue as an arrearage for which T.J.W. would eventually be responsible. We conclude that the trial court's decision was within its range of discretion in setting support orders and was in the best interest of all concerned parties.
R.L.M. was born to M.A.M. (the mother) on September 4, 1985. T.J.W. admitted paternity on October 20, 1986, and a hearing was held on the issue *851 of financial support. The trial court's factual findings from this hearing are not disputed and are summarized below.
At the time of the hearing, T.J.W. was a full-time student in the University of Wisconsin system. His part-time employment grossed approximately $87 per week, but his expenses related to education and transportation were $76 per week. He lived with his parents and paid no room and board. The trial court specifically found that it was desirable that T.J.W. continue his education.
The mother's part-time employment grossed $41.62 per week. She also received $463 per month in Aid to Families with Dependent Children (AFDC).
The trial court's reasoning for its decision was that, although desirable for T.J.W. to continue his education, it was unfair to the mother and the public to bear the burden of his desire to do so. Rather than order him to look for full-time employment, which the trial court stated was within its power, the court set a two-tier support order: $40 per week, but only $12 per week would be payable currently, the remainder would accrue.[1]
T.J.W. argues on appeal that the trial court abused its discretion in ordering child support which, utilizing the $40 figure, amounted to 46% of his weekly gross income. He also takes issue with the "built-in" arrearage which will accrue even if he keeps current with the $12 per week payments.
*852 [1]
Child support awards must be based on the needs of the custodial parent and children and the ability of the noncustodial parent to pay. See Balaam v. Balaam, 52 Wis. 2d 20, 25, 187 N.W.2d 867, 870 (1971). The support award should be established according to: (1) the custodial parent's assets, income and special needs; (2) the child's health, age and customary station in life; and (3) the noncustodial parent's income, debts, assets, age and health. Id.
[2, 3]
Normally, a child support award in a paternity action should be based on the amount the father is earning when the award is made. See id. at 26, 187 N.W.2d at 870. However, in cases where the father was chosen not to fully and diligently pursue his best employment opportunities, the court may find that he is shirking his support responsibilities and may base its support award on the father's earning capacity or potential earnings. Knutson v. Knutson, 15 Wis. 2d 115, 117-18, 111 N.W.2d 905, 907 (1961). Although there is no set list of factors which ultimately prove decisive in a "shirking" determination, a determination that shirking has occurred is often accompanied by a finding that the father has made a voluntary or self-inflicted change in his financial circumstances. Wallen v. Wallen, 139 Wis. 2d 217, 225-26, 407 N.W.2d 293, 296 (Ct. App. 1987).
A determination that "shirking" has occurred usually implies that the noncustodial spouse is trying to avoid his or her support obligations. The trial court did not find such an intent here; therefore, T.J.W. is not technically guilty of "shirking"; in fact, obtaining a college degree should allow him to increase his earning capacity and eventually enhance his ability to *853 support his child. Nevertheless, T.J.W. has decided to work part-time rather than full-time and, consequently, has voluntarily reduced his income.
The Balaam court described the standard to be used in a similar situation, albeit in a divorce setting:
A divorced husband should be allowed a fair choice of a means of livelihood and to pursue what he honestly feels are his best opportunities even though he might for the present, at least, be working for a lesser financial return. This rule is, of course, subject to reasonableness commensurate with his obligations to his children and his former wife.
52 Wis. 2d at 28, 187 N.W.2d at 871. In applying the Balaam criteria to the present case, the trial court's order permits T.J.W. to freely choose his means of livelihood and pursue his best opportunities. Also in accord with the Balaam decision, however, the order takes into account the "reasonableness commensurate with his obligations to his child[]" by requiring him to be responsible for the amount of support he could reasonably pay if he worked full-time. In sum, the trial court's order properly takes into consideration the Balaam criteria.
By working part-time, T.J.W. has freely chosen to earn less than he is capable of earning at a full-time job; consequently, he is not fulfilling his child support obligations. It makes no difference to his child whether the court elects to call T.J.W.'s failure to meet his support obligations "shirking" or gives it some other name. In either instance, the effect is identical T.J.W.'s decision to reduce his income by working part-time effectively deprives his child of the support to which the child is reasonably entitled. When this *854 occurs, the trial court need not base its support award on the noncustodial spouse's current earnings; instead, the court is permitted to base its support order on the spouse's potential income. See Knutson, 15 Wis. 2d at 117-18, 111 N.W.2d at 907.
The trial court recognized that T.J.W. decided to forsake maximizing his present earnings with the laudable intention of furthering his education to enhance his future earning capacity and improve his, and his child's, standard of living. Nevertheless, the trial court could not allow T.J.W. to escape his support responsibilities by attending school. Therefore, the court worked out a compromise whereby T.J.W. could satisfy his child support obligations based on his parttime earnings, accrue as arrearages that portion of his support obligation which he was unable to pay out of his present earnings, and still pursue his goal of obtaining a college education.
[4]
The order which provided that T.J.W. pay $40 per week, but which only required that he pay $12 per week to avoid being held in contempt, lies well within the range of the trial court's discretion. The court did not have to set a two-tier order; the court could have ordered that T.J.W. find full-time work and pay the full $40 per week.
The determination of child support rests within the discretion of the trial court and will not be overturned unless the trial court abuses its discretion.[2]Dittberner v. Dittberner, 54 Wis. 2d 671, 676, 196 N.W.2d 643, 646 (1972). By demonstrating its sensitivity to the needs of both T.J.W. and his child, the trial *855 court properly used its discretionary powers in structuring the support order.
By the Court.Order affirmed.
NOTES
[1] The rationale for the $12 per week "floor" on payments was that the first $50 per month in payments from T.J.W. would be paid directly to the mother, rather than to the county for reimbursement of AFDC payments.
[2] The legislatively-mandated standards which currently govern child support awards were not in effect when this case was heard by the trial court.